**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**DANIEL W. BARBER,**

                **Plaintiff,**　　　　　　　　　1:10-cv-1198
　　　　　　　　　　　　　　　　　　　　　　　　　　(GLS/CFH)
　　　　　　v.

**TIMOTHY J. RUZZO,**

                **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Oliver, Oliver Law Firm | LEWIS B. OLIVER, JR., ESQ. |
| 156 Madison Avenue | |
| Albany, NY 12202 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. ERIC T. SCHNEIDERMAN | ROGER W. KINSEY |
| New York State Attorney General | Assistant Attorney General |
| Albany Office | |
| The Capitol | |
| Albany, NY 12224 | |

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiff Daniel W. Barber commenced this action against defendants Timothy J. Ruzzo, Margaret L. McMullen, and Michael Spitz, asserting

claims pursuant to 42 U.S.C. § 1983 for unlawful detention, illegal search, malicious prosecution, and restriction of free speech. (*See* Compl. ¶ 1, Dkt. No. 1.) In a Memorandum-Decision and Order dated October 19, 2011, the court dismissed all but Barber's malicious prosecution claim against Ruzzo. (*See* Dkt. No. 15.) Pending is Ruzzo's motion for summary judgment. (*See* Dkt. No. 27.) For the reasons that follow, the motion is granted.

## II. Background[1]

Barber, a former corrections officer, was fired in October 2001 "after an investigation" by Ruzzo, a State Police Investigator. (Def.'s Statement of Material Facts (SMF) ¶ 1, Dkt. No. 29; Compl. ¶ 5.) Roughly six years later, Barber "mailed a postcard from Florida to the Coxsackie Correctional Facility." (Def.'s SMF ¶ 5.) The postcard, which was received by

---

[1] Barber's response to Ruzzo's Rule 7.1(a)(3) statement contains several unsubstantiated denials. (*See* Dkt. No. 34); *see also* N.D.N.Y. L.R. 7.1(a)(3) (requiring that "[e]ach denial shall set forth a specific citation to the record where the factual issue arises"). Notwithstanding his failure to comply with the rules, the court deems admitted those facts which are properly supported by admissible evidence pursuant to Federal Rule of Civil Procedure 56(e)(2) and Local Rule 7.1(a)(3). The court further notes that Barber's submission includes an affirmative statement of material facts. (*See* Dkt. No. 34, Attach. 2.) Although the rule permits a non-movant to "set forth any additional material facts that [he] contends are in dispute," Barber's statement includes 163 paragraphs of facts, many of which are neither disputed nor material. (*See generally id.*) Thus, the court discusses only the relevant facts, and, in the interest of brevity, incorporates by reference its previous recitation of Barber's allegations. (*See* Dkt. No. 15 at 2-5.)

McMullen, a supply and mail clerk, stated:

> Hello, Captain:
> You probably don't know me but that's quite alright.  I just want you to tell all my fellow officers that I, Daniel W. Barber said the following.  That I have had quite a time this last [six and a half] years since I was fired.  That the vacation I have been on is almost over.  But before I come back to work I have to bring the following to justice, all NYS politicians and their appointed goons, the union and the lawyers representing us.  Corruption will no longer exist when I am done.  You tell them that this is an old Irish family tradition that if you steal from the father you steal from his children.  There is nothing far greater on this earth worth dying for than my daughter.  You tell them all that hell is coming for justice.  By the way take good care of badge #1415 . . . it's mine.  Signed, Daniel W. Barber AKA Jailbird

(*See id.* ¶ 6; Dkt. No. 27, Attach. 4 at 2.)  After reading the card, McMullen, who described the language as being "of a threatening nature," forwarded it to Spitz, her watch commander.  (Def.'s SMF ¶¶ 7-8; Dkt. No. 27, Attach. 5.)  In turn, Spitz, after showing the postcard to his supervisor, Captain Dierie, was "ordered" to notify the State Police.  (Dkt. No. 34, Attach. 15 at 18-21.)

Spitz called "barracks and ask[ed] if Ruzzo was" available.  (*Id.* at 21.)  Ruzzo received the call on May 3, 2007, the morning after a uniformed trooper responded to Coxsackie and collected the postcard.  (*See* Dkt. No. 27, Attach. 12 at 37-38.)  Believing that the postcard was

3

threatening, (*see id.* at 38), Ruzzo contacted the District Attorney, Terry Wilhelm, read it to him, and asked for guidance on how to proceed. (*See* Dkt. No. 27, Attach. 14 at 4, 9-10.) Wilhelm "advised [Ruzzo that] . . . there was certainly probable cause to make an arrest for aggravated harassment." (*Id.* at 10.) Furthermore, Wilhelm "authorized the arrest" of Barber, who admits that he sent the postcard, and directed Ruzzo "to file the accusatory [instrument therefor]." (*Id.* at 12, 16; *see* Def.'s SMF ¶ 32; Dkt. No. 27, Attach. 13 at 24.) Accordingly, Ruzzo arrested Barber, swore out an Information charging him with aggravated harassment in the second degree[2] and brought him before Town Justice Robert Carl. (*See* Def.'s SMF ¶ 22; Dkt. No. 27, Attach. 7.)

Justice Carl remanded Barber to County Jail, set bail at $1,000 and ordered a mental health evaluation. (*See* Def.'s SMF ¶¶ 22-24; Dkt. No.

---

[2] As relevant here, section 240.30(1) of the New York Penal Law provides that:

A person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she:

1. Either (a) communicates with a person, anonymously or otherwise, by telephone, by telegraph, or by mail, or by transmitting or delivering any other form of written communication, in a manner likely to cause annoyance or alarm; or

(b) causes a communication to be initiated by mechanical or electronic means or otherwise with a person, anonymously or otherwise, by telephone, by telegraph, or by mail, or by transmitting or delivering any other form of written communication, in a manner likely to cause annoyance or alarm[.]

4

27, Attach. 8 at 1.) In addition, Justice Carl issued an order of protection, which mandated that Barber "stay away from Coxsackie and Green Correctional Facilities." (Def.'s SMF ¶ 25; Dkt. No. 27, Attach. 8 at 2.) On May 12, 2007, Town Justice Richard Roberg released Barber on his own recognizance and ordered him to submit to an out-patient mental health evaluation. (*See* Def.'s SMF ¶ 31; Dkt. No. 27, Attach. 9.) Just over one year later, the charges were dismissed. (*See* Dkt. No. 34, Attach. 1 ¶ 94.)

### III. Standard of Review

The standard of review under Federal Rule of Civil Procedure 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011).

### IV. Discussion

Ruzzo asserts that Barber cannot establish a prima facie case of malicious prosecution because he had probable cause to commence the criminal proceeding. (*See* Dkt. No. 27, Attach. 1 at 5-12); *see Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir. 1994) (discussing the elements of malicious prosecution). Alternatively, Ruzzo claims that he is entitled to

5

qualified immunity.  (*See id.* at 16-20.)  Though arguably misfocused,[3] Barber essentially contends that Ruzzo's motion should be denied.  (*See generally* Dkt. No. 34, Attach. 21.)  The court agrees with Ruzzo.

Probable cause is a complete defense to a malicious prosecution claim, *see Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003), the relevant factual inquiry for which concerns only "what information the officer knew at the . . . outset of prosecution," *Benn v. Kissane*, No. 11-5184-cv, 2013 WL 362974, at *2 (2d Cir. Jan. 13, 2013) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)); *see also Colon v. City of N.Y.*, 60 N.Y.2d 78, 82 (1983) ("Probable cause[, under New York law,] consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty.").  The "officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."  *Devenpeck*, 543 U.S. at 153; *see Simmons v. N.Y.C.*

---

[3] Barber devotes a substantial portion of his submission to the events culminating in his arrest.  (*See, e.g.*, Dkt. No. 34, Attach. 2 ¶¶ 1-141; Dkt. No. 34, Attach. 21 at 13-34.)  However, as the court explained in *McClellan v. Smith*, No. 1:05-cv-1141, 2009 WL 3587431, at *6 (N.D.N.Y. Oct. 26, 2009), "[i]t is erroneous to conflate probable cause to arrest with probable cause to prosecute."  "False imprisonment asks whether the facts known to the police officer at the time of confinement objectively establish probable cause."  *Id.*  On the other hand, "[m]alicious prosecution asks whether the facts objectively support a reasonable belief that a criminal prosecution should be initiated or continued because that prosecution could succeed."  *Id.*  Although the crime charged and prosecuted are one in the same, Barber's probable cause argument is, to the extent that it focuses on anything other than the "the facts [that] objectively support a reasonable belief that a criminal prosecution should be initiated," irrelevant.  *Id.*

6

*Police Dep't*, 97 F. App'x 341, 343 (2d Cir. 2004) (stating that "probable cause is an objective matter that does not depend on the subjective biases of the arresting officer"). Equally immaterial is "whether the substance of the information known to the officer is *actually true*," *Benn*, 2013 WL 362974, at *2, as the court need only decide if the officer—based on the "totality of the circumstances," *Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010)—possessed "'probable cause to *believe*'" that a crime was committed, *Benn*, 2013 WL 362974, at *2 (quoting *Maryland v. Pringle*, 540 U.S. 366, 370 (2003)). "Although determining what the officer knew at the relevant time is an issue of fact, whether those known circumstances satisfy the probable-cause standard is a mixed question of law and fact, and [t]he ultimate determination of whether probable cause . . . existed is essentially a legal question." *Benn*, 2013 WL 362974, at *3 (internal quotation marks and citations omitted).

Here, the totality of the circumstances overwhelmingly support Ruzzo's belief that a criminal prosecution should have been initiated. First, the postcard, which Barber admits he wrote, contains language that is alarming. (*See* Def.'s SMF ¶ 32; Dkt. No. 27, Attach. 4 at 2.) Irrespective of the language's legal significance or precisely how the staff at Coxsackie

7

responded,[4] (*see* Dkt. No. 34, Attach. 21 at 4-9, 23-27), it is undisputed that three officials at Coxsackie—namely, McMullen, Spitz and Dierie—were concerned enough with the contents of the postcard to contact the State Police, (*see* Def.'s SMF ¶¶ 7-11; Dkt. No. 34, Attach. 15 at 21). Furthermore, Barber concedes that Ruzzo did not initiate the criminal proceeding on his own accord.[5] (*See* Dkt. No. 34 ¶ 14.) Rather, Ruzzo contacted Wilhelm, the District Attorney, who confirmed during his deposition in this matter, that he told Ruzzo that "there was certainly probable cause to make an arrest" and commence a criminal proceeding. (Dkt. No. 27, Attach. 14 at 10, 12, 16; *see* Def.'s SMF ¶¶ 11-12, 14.) Standing alone, these factors demonstrate that it was objectively reasonable for Ruzzo to believe that a prosecution for aggravated harassment should be initiated.

In addition to these factors, there are two principal flaws in Barber's argument. The first is the notion that Justice Carl did not find that there

---

[4] Having reviewed the postcard, the court has little difficulty seeing how the recipients of it would be annoyed or alarmed. (*See* Dkt. No. 27, Attach. 4 at 2); N.Y. Penal Law § 240.30(1) (McKinney 2008).

[5] The court is unable to discern why Barber would admit that Ruzzo contacted the District Attorney's office, concede that Wilhelm offered legal advise, and then deny that it was Wilhelm who spoke to Ruzzo. (*See* Dkt. No. 27, Attach. 14 at 9; Dkt. No. 34 ¶¶ 14-17.)

8

was probable cause. (*See* Dkt. No. 34, Attach. 21 at 12.) Besides stating that he too believed that the postcard constituted probable cause for the charge of aggravated harassment, (*see* Dkt. No. 27, Attach. 16 at 18), Justice Carl was required to dismiss the Information if cause was lacking, *see* N.Y. Crim. Proc. Law § 140.45. Thus, even if his present recollection is questionable, (*see* Dkt. No. 34, Attach. 21 at 12), his decisions during the arraignment to, among other things, remand Barber, confirms that he believed probable cause existed at that time as well. (*See* Def.'s SMF ¶¶ 22-25.) Secondly, Barber concedes that Ruzzo took no part in the prosecution after the arraignment, (*see* Def.'s SMF ¶¶ 35, 36; Dkt. No. 34 ¶ 35), and has never alleged that Ruzzo falsified testimony in order to influence the prosecution, (*see* Compl.). Consequently, Wilhelm's decision to proceed absolves Ruzzo of liability for any misconduct that occurred thereafter. *See White v. Frank*, 855 F.2d 956, 962 (2d Cir. 1988).

In sum, the court, having considered the totality of the circumstances, concludes that Ruzzo had probable cause to commence the criminal proceeding, and thus, Barber's claim for malicious prosecution

fails as a matter of law.[6]  Even if Ruzzo did not have probable cause, "it was objectively reasonable for [him] to believe [his] conduct did not violate" Barber's rights, based on, *inter alia*, Wilhelm's representations.  *Gilles v. Repicky*, 511 F.3d 239, 244 (2d Cir. 2007)*; see Wagner*, 827 F. Supp. 2d at 100-01 (discussing the qualified immunity standard).  Qualified immunity therefore provides an alternative basis for summary judgment.  Accordingly, Ruzzo's motion for summary judgment is granted and Barber's Complaint is dismissed.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Ruzzo's motion for summary judgment (Dkt. No. 27) is **GRANTED** and Barber's Complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk shall close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 12, 2013
Albany, New York

*/s/ Gary L. Sharpe*
Gary L. Sharpe
Chief Judge
U.S. District Court

---

[6] In light of the court's decision with respect to probable cause, it need not reach the issue of actual malice.

10